**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER SHULL,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.** |
| | § | **Hon.** |
| **OFFICER SCOTT HARRELL,** | § | |
| *Defendant.* | § | |

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

---

NOW COMES Plaintiff, **CHRISTOPHER SHULL ("Shull")**, by and through his attorney, Brandon J. Grable of Grable Grimshaw PLLC, complaining of Defendant **OFFICER SCOTT HARRELL (Badge No. 3896)** and respectfully alleging as follows:

### I.    INTRODUCTION

1.    In this State, citizens have a First Amendment right to criticize police officers performing their public duties.  In direct response to Mr. Shull exercising his First Amendment right, former Texas City police officer and Defendant Scott Harrell retaliated against him.  Harrell unlawfully seized and falsely detained and charged Plaintiff because he questioned the officer's understanding of the law, challenged his authority to enforce traffic laws on private property, and ridiculed the officer's choices.

### II.    JURISDICTION AND VENUE

2.    This is a civil rights action in which the Plaintiff seeks relief for violating his rights secured by 42 U.S.C. § 1983 and the First and Fourth Amendments.

3.    Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

1

4.      Venue is properly laid in the Southern District of Texas under 28 U.S.C. § 1391(b)(2).

5.      The events that gave rise to this lawsuit primarily took place at 6201 Gulf Freeway, Texas City, Texas 77591, in Galveston County, Texas.

6.      Pursuant to 42 U.S.C. § 1983, and other applicable laws, the Court may award nominal, compensatory, and punitive damages, as well as equitable relief against the Defendant in his individual capacity, for the violations of Plaintiff's Constitutional rights and harm caused by his actions and/or inactions.

### III.     PARTIES

7.      Plaintiff **CHRISTOPHER SHULL** ("Plaintiff Shull") is a law-abiding citizen of the United States and a resident of the City of Dickinson, County of Galveston, State of Texas.

8.      Defendant **SCOTT HARRELL** ("Defendant Harrell") was at all pertinent times a police officer employed by Texas City and was at all pertinent times acting under color of state law in the performance of his duties as a Texas City police officer.  Each and all of the acts of Defendant Harrell were committed despite his knowledge that he was engaging in unlawful and unconstitutional acts.  Yet, he did them anyway, knowingly, recklessly, intentionally, wantonly, callously, purposely, purposefully, sadistically, cruelly, deliberately, and/or with deliberate indifference, gross negligence, and/or reckless disregard.

### IV.     STATEMENT OF FACTS

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

- 1st Amendment to the Constitution of the United States

2

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

- Section 1, 14th Amendment to the Constitution of the United States

9.      April 19, 2023. Just after 7:20 AM, Plaintiff Shull, a local small-business owner, drove through the Texas City Buc-ee's parking lot on his way to fill his car's gas tank at the pumps. He crossed the empty parking lot using the most direct route like any other morning before. This route included driving across empty parking spots to create a direct path from the entrance to the pumps. While Plaintiff Shull may have been taking the most efficient route through the private parking lot, he drove slowly, safely, and controlled.



10.     Like any previous morning, he pulled up next to a pump and exited his vehicle to pump gas. Unlike any prior morning, a Texas City police officer pulled up behind him, lights flashing.



11.     Wondering what the officer wanted, Plaintiff Shull approached the police cruiser. As he approached, Defendant Officer Harrell exited his vehicle and demanded that Plaintiff not walk up to his car.  Understanding the officer was exercising authority and detaining the Plaintiff, he complied with this order and moved back.

12.     After getting out of the police vehicle, Defendant Harrell immediately told Plaintiff, "Hey, man, you can't drive through the parking lot like that."  Defendant Harrell knew that no crime had been committed.

13.     Defendant Harrell then continued as if he had initiated a traffic stop—on private property, in a private parking lot, and without any legal justification—by asking for Mr. Shull's driver's license and insurance and asking if Mr. Shull had any weapons in his car that he needed to worry about.  Mr. Shull complied with these unlawful orders.

14.     Defendant Harrell asked Plaintiff Shull if there was any reason he felt the need to come through the parking lot like that.  Plaintiff responded that he did not think he did anything wrong.  Defendant Harrell did not like Plaintiff's criticism and intended to send a message.

15.     After Plaintiff verbally disagreed with Defendant Harrell's description of events, the two men—one a citizen and one a man with a badge—continued to contend that their version of events was correct.  As the two discussed the situation, Defendant Harrell waited for dispatch

4

to get back to him on some information while Plaintiff Shull found a copy of his insurance on his phone.

16. Once Defendant Officer Harrell had collected the information he demanded, he directed Mr. Shull to sit tight and, if he wanted to, to go ahead and fill up his car. Meanwhile, Defendant Harrell returned to his patrol vehicle to enter the information Plaintiff provided into his computer system.

17. Once finished, he told Plaintiff that he would not write him a ticket because he was out of tickets.

18. Surprised there would even be a legal basis for this potential ticket, Plaintiff Shull asked Defendant Officer Harrell what the ticket would have been. Defendant Harrell told him, "Disregarding traffic control device." Plaintiff Shull asked him, "On private property?"

19. Defendant Harrell responded, "Yes." Officer Harrell then claimed crossing through parking spaces—even on private property was illegal. (Yet, in video footage, Defendant Officer Harrell is seen executing the same violation he was asserting Plaintiff Shull did.)

 

5



20.    Plaintiff Shull did not disregard any "official traffic-control device" by driving across private parking boundaries.  As per Texas Transportation Code § 544.004(a), "an operator of a vehicle or streetcar shall comply with an *official traffic-control device*." (emphasis added). The Transportation Code defines "Official traffic-control device" as "a sign, signal, marking, or devices that is: (A) consistent with this subtitle; (B) p*laced or erected by a public body or officer having jurisdiction*; and (C) used to regulate, warn, or guide traffic." Tex. Transp. Code § 541.304(1) (emphasis added).

21.    While a parking boundary *might* be a marking consistent with Subtitle C, Rules of the Road (Chapters 541 through 600 of the Texas Transportation Code), a public body or officer with jurisdiction did not erect the private parking boundaries at Buc-ees.  The boundary is also not intended to regulate, warn, or guide traffic but rather to encourage adequate use of parking lots.

22.    The Texas Manual on Uniform Traffic Control Devices,[1] issued under Tex. Transp. Code § 544.001, explains that "parking space boundaries *encourages more orderly and efficient use of parking spaces* where parking turnover is substantial."  TEX. MANUAL UNIF. TRAFFIC CONTROL DEVICES § 3B.19 (Tex. Dep't of Transp. 2014) (emphasis added).  The intent of the markings is "to prevent encroachment into fire hydrant zones, bus stops, loading zones, approaches to intersections, curb ramps, and clearance spaces for islands and other zones where parking is

---

[1] https://www.txdot.gov/business/resources/traffic-design-standards/tmutcd.html

restricted." *Id.*

23.     But the Texas Manual on Uniform Traffic Control Devices clarifies that traffic control devices are limited to those installed "on any street, highway, bikeway, or private road *open to public travel*." *Id.* at Introduction, page 1-1 (emphasis added). Notably, "Parking areas, including driving aisles within those parking areas . . . shall not be considered to be 'open to public travel' for purposes of TMUTCD applicability." *Id.* Therefore, parking boundaries are *not* traffic control devices "used to regulate, warn, or guide traffic."

24.     Back to Plaintiff Shull. Defendant Harrell handed Plaintiff Shull back his driver's license and summarized the results of the traffic stop: (1) he was not going to write Mr. Shull a ticket, and (2) **he did not appreciate the attitude,** because Plaintiff Shull (allegedly) knew he did wrong but still wanted to go back and forth with Defendant Harrell.

25.     Plaintiff Shull told Defendant Harrell that there were a lot better things he could be doing, and an annoyed Defendant Harrell asked or "threatened" the idea of being arrested, repeatedly asking, "Do you want to go to jail?" before claiming, "You could go to jail for this."

26.     Plaintiff Shull, feeling intimidated and recognizing that he was not the one with a badge between the two of them, stated, "You can do what you want to do; I can't stop you."

27.     Defendant Officer Harrell tried to claim that he did not want to take Mr. Shull to jail because it would be a waste of his time, "***but the attitude is not necessary***."

28.     Plaintiff Shull agreed.

29.     Defendant Harrell defensively tried to claim that he had not been rude to Plaintiff Shull. Defendant Harrell amended his statement to claim that he could not be rude to him because he had a camera on. If he were rude to him, Plaintiff would file a complaint, and Defendant Harrell would get in trouble based on his supervisor's opinions of his behavior.

30.    Plaintiff Shull shook his head and told the officer he was not worried.

31.    Defendant Harrell cautioned Plaintiff Shull that he would patrol that area in the future to see if it would happen again.  Plaintiff Shull agreed but told Defendant Harrell that, in turn, he would look up the law about private property because he did not believe that Defendant Harrell had the authority to issue tickets for alleged traffic violations on private property.

32.    Something shifted.  Perhaps Defendant Harrell's emotionally driven perception that he controlled the ongoing narrative.

33.    Upon hearing this comment, Defendant Harrell claimed he could take Plaintiff to jail for Class A – Reckless Driving because Plaintiff Shull allegedly almost hit another car in the parking lot.

34.    Plaintiff Shull protested that he did not get anywhere near the other vehicle and that cameras were everywhere.

35.    As this supposed near-collision happened in a Buc-ee's parking lot, several cameras focused on various areas of the parking lot.  This alleged near-collision can be seen below as the black car passes by the white truck near the line of gas pumps:













36.     Despite this knowledge, Plaintiff bitterly admitted, "**You can do what you want to do, Harrell; I can't stop you.**  If you want to be this way, then that's up to you."

37.     Defendant Harrell, seemingly oblivious to the effect his abusing his authority could have on ordinary citizens—even when directly accused of such—asked Plaintiff if he was having a bad day or if he had raised his voice—as if either could compare to being threatened with arrest for expressing a dissenting opinion.

38.     Plaintiff Shull told Defendant Harrell he was upset because he thought this whole thing was ridiculous, that they were even talking when nothing had happened, and Officer Harrell threatened to take him to jail.

39.     Despite repeatedly threatening to take Plaintiff to jail, Defendant Harrell argued that he did not think he had made any threats.

40.     The two men then entered a lively debate on the law.  Plaintiff Shull stopped first, calmed himself down, and told the officer, "We're good."  Defendant Harrell disagreed.

41.     A flabbergasted Plaintiff accused Defendant Officer Harrell of playing Future Cop. Defendant Harrell felt he needed to stop him from something he might do in the future, that he

needed to take action because maybe, sometime in the future, Plaintiff Shull might possibly continue to do something.

42.   Indignant, Defendant Harrell asked Plaintiff what the law's intent was.

43.   Plaintiff informed the officer that he understood the officer wanted voluntary compliance with the officer's **(unlawful)** order.

44.   In response to this statement, Defendant Harrell placed a cooperative Plaintiff Shull in handcuffs.  As he handcuffed Plaintiff, he told him, "We'll do this a different way, then."

45.   Now, for a legitimate violation of the Texas Transportation Code (which this was not), whether Defendant Harrell placed Plaintiff Shull in handcuffs and ultimately brought him before a magistrate or provided him a citation with a written promise to appear in court to sign, at this point Plaintiff Harrell was arrested.[2]

46.   Plaintiff became distressed after being cuffed.  He has a scar on his left wrist from prior tendon surgery; the handcuffs aggravated that pre-existing injury.  Plaintiff communicated this distress to Defendant Harrell.  Although Officer Harrell offered him two handcuffs, he did not move to get them.

---

[2] Texas Transportation Code, Chapter 543, Sections 543.001, 543.002(a)(2), 543.003, 543.004(a)(2), 543.005.  TX. Trans. Code § 543.003, "An officer who arrests a person for a violation of this subtitle punishable as a misdemeanor and who does not take the person before a magistrate shall issue a written notice to appear in court showing the time and place the person is to appear, the offense charged, the name and address of the person charged, and, if applicable, the license number of the person's vehicle."

TX. Trans. Code § 543.005, "To secure release, the person arrested must make a written promise to appear in court by signing the written notice prepared by the arresting officer.  The signature may be obtained on a duplicate form or an electronic device capable of creating a copy of the signed notice.  The arresting officer shall retain the paper or electronic original of the notice and deliver the copy of the notice to the person arrested.  The officer shall then promptly release the person from custody."

47.     After Plaintiff sat in the back of the police cruiser, he told Defendant Harrell that he could not believe he was doing this.  Defendant Harrell responded back with, "It didn't have to go this way."  When Plaintiff agreed with him, Defendant Harrell said he disagreed with him. Plaintiff informed Defendant Harrell that he knew that already.

48.     Defendant Harrell then asked if Plaintiff wanted someone to call someone to come pick up his car or if the officer needed to have it towed.  In response, Plaintiff requested the defendant officer, "Are we really going to do this, Harrell?"  Defendant Harrell told Plaintiff that he did not think they did.  Plaintiff agreed with him.  Defendant Harrell then explained to Plaintiff that they were doing this <u>because Plaintiff argued with Defendant Harrell</u>.

49.     The two discussed the "near" collision.  Plaintiff Shull argued that he was nowhere close to the truck; Defendant Harrell accused him of "flying through the parking lot," such that the white truck had to "slam on [its] brakes."  The officer knew this was not true, but he intended to use his authority to retaliate against Shull for his criticisms.

50.     When Plaintiff Shull stopped defending his viewpoint, Defendant Harrell again asked what Plaintiff Shull wanted done with his vehicle.  Defendant Harrell tried to tell Plaintiff Shull that he did not want to have to tow the car because "that'd be being a real d*ck, and I'm trying not to be a d*ck" (as Mr. Shull sat in pain in one pair of handcuffs under arrest in the back of a police vehicle because he disagreed with a police officer).

51.     When Plaintiff Shull did not respond, Defendant Harrell told him he would ask one more time before he would have to have it towed.  Plaintiff Shull asked Defendant Harrell if they could back this down; please cool off.  He even apologized.

52.     Faced with Plaintiff Shull's attempts to deescalate the situation, Defendant Officer Harrell responded, "You have forced my hand at this point because **if I don't go and see this**

**through to its conclusion, I know you're going to go to the police department and file a**

**complaint on me.**"

53.     Plaintiff Shull eventually agreed to call his wife to pick up his car, so Defendant Harrell finally decided and moved to get Plaintiff Shull a second pair of handcuffs.

54.     Defendant Harrell left Plaintiff Shull double-handcuffed in the back of his cruiser while he prepped Plaintiff Shull's car for pick-up (removed the gas pump nozzle and closed the gas cap). While doing so, another Texas City police officer appeared on the scene.



55.     Defendant Harrell relayed the situation to Officer Richard Dricks. He told Dricks that he intended to tell Plaintiff Shull to chill out, but Plaintiff Shull chose *to argue* with him so he was going to charge him. He claimed he would have given Plaintiff Shull a ticket rather than arrest him but neglected to grab a ticket writer that morning.

56.     Officer Dricks told Defendant Harrell that he had paper tickets. Defendant Harrell finally relented.

57.     Defendant Harrell released Plaintiff Shull from custody, telling him it was because he believed jail was excessive. Defendant Harrell then wrote Plaintiff Shull a citation for "Other— Disregard Official Traffic Control Device." Plaintiff signed the citation when asked. The City of Texas City has since dismissed this citation. Defendant Harrell then told Plaintiff he was free to leave.

58.     The 23-minute seizure was finally over.

59.     On May 24, 2023, thirty-five days after the incident, Texas City Police Chief Joe A. Stanton tried to calm the public furor by placing Defendant Scott Harrell on desk duty while

the Texas City Police Department investigated.

 

## TEXAS CITY POLICE DEPARTMENT
### JOE A. STANTON
Chief of Police
FBI N.A. Graduate - Session 243

### Chief's Statement

Date: May 24, 2023
Re: Officer Scott Harrell Video (April 19th, 2023)

Texas City, TX. The Texas City Police Department has strict policies prohibiting officers from violating individuals' rights with whom the officers' encounter. These strict policies are underscored in the City's and the Texas City Police Department's policies, training and practices. Every incident of this kind is taken seriously, and subject to review by me, Chief Joe A. Stanton. An officer is subject to discipline up to and including possible termination for violating such policies.

In this situation, involving Officer Scott Harrell I reviewed his conduct and actions and as a result I have ordered the incident to be investigated by the Office of Professional Standards. The investigation will be an Internal Affairs investigation that could lead to possible criminal charges.

This citizen encounter is still under investigation and this written statement is based on the details we know at this point. We are committed to being transparent with our community, and it's our intention to release the results of the investigation as soon as a final disposition has been reached.

Being that the Texas City Police Department is subject to the Texas Local Government Code Chapter 143 (Civil Service), we have a very strict process to follow regarding any Internal Affairs investigations. Officer Scott Harrell has been placed on inside administrative duties pending the outcome of our investigation. Officer Harrell has been with the Texas City Police Department since November of 2018.

Being that this is an ongoing investigation no further comments will be made.

Chief Joe A. Stanton

*"Dedicated Service Since 1911"*
1004 9th Avenue North, Texas City, TX 77590-7407
www.texascitytx.gov   (409) 948-2525

60.     Privately, Sergeant Mike Kelemen (Badge #3143) sent out an email (which has since been released to the public) to his officers including Defendant Harrell and Officer Dricks on May 27, 2023, with relevant "Command Staff Notes" making clear the City does not "make traffic stops for violations on private property."

- Review the 7 step violator with your shifts and document on the CIR.

- Please make sure the officers on your shift understand that we do not typically make traffic stops for violations on private property. The officer has to be able to articulate reckless driving in a public place, or driving while intoxicated in a public place if they are going to stop someone for an offense that didn't occur on a roadway.

- We should always de-escalate situations to the best of our ability and not let our emotions get the best of us. Our actions are always judged by the public so it is crucial to be professional at all times.

61.    On September 1, 2023, the first act of new Texas City Police Chief Landis Cravens was to terminate Defendant Harrell.

## LAWS CLEARLY ESTABLISHED ON April 19, 2023

62.    It is clearly established that it is a First Amendment violation if an officer retaliates against someone in response to protected speech. *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) (citing *Lewis v. City of New Orleans*, 415 U.S. 130, 134-35, (1974) (Powell, J., concurring)) ("Trained officers must exercise restraint when confronted with a citizen's anger over police action."); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) ("The First Amendment prohibits . . . adverse governmental action against an individual in retaliation for the exercise of protected speech activities."); see *City of Hous. v. Hill*, 482 U.S. 451, 462 (1987) ("[The] First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").

63.    It is clearly established that an arrest or prosecution unsupported by probable cause that is made in retaliation for protected speech violates the First Amendment. *See Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016)) (individuals who protest are protected under the First Amendment from retaliatory actions by government officials). *Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002) (retaliatory criminal prosecutions may constitute actionable First Amendment

16

violation). *See also Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out"). "In a retaliatory prosecution case, the key defendant is typically not the prosecutor who made the charging decision that injured the plaintiff, because prosecutors enjoy absolute immunity for their decisions to prosecute. Rather, the key defendant is the person who allegedly prompted the prosecutor's decision." *Reichle v. Howards*, 566 U.S. 658, 667–68 (2012).

64.    It was clearly established at the time of the incident that a traffic stop must be predicated on reasonable suspicion. *Brendlin v. California*, 551 U.S. 249, 255-56 (2007). The right to be free from arrest without probable cause was also clearly established. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
### (First Amendment– Retaliatory Arrest)

65.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

66.    Plaintiff Shull asserts this count against Defendant Officer Scott Harrell, for his retaliation against him on or about April 19, 2023.

67.    Defendant, at all relevant times, acted under the color of law and was an employee of the City of Texas City Police Department.

68.    Plaintiff engaged in constitutionally protected conduct by verbally criticizing and arguing with Defendant Harrell. Plaintiff was further involved in protected activity since Defendant Harrell believed that if he did not arrest Plaintiff, Plaintiff would file a complaint against him.

17

69.     In direct response to Plaintiff engaging in protected conduct, Defendant Harrell intentionally, knowingly, maliciously, recklessly, and/or unreasonably seized, detained, and arrested Plaintiff and his belongings without any lawful basis.

70.     Defendant Harrell did not know any facts or circumstances that would lead a reasonable person to believe that Plaintiff had committed any offense.

71.     Such retaliation would deter a person of ordinary firmness from engaging in such protected conduct.

72.     The retaliation was motivated at least in part by the protected speech.

73.     There is a causal connection between Plaintiff's constitutionally protected conduct and the adverse retaliatory actions taken by Defendant Harrell.

74.     Defendant Harrell's acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the First and Fourteenth Amendments to the Constitution of the United States, and in violation of 42 U.S.C. § 1983.

75.     As a proximate result of the illegal and unconstitutional acts of Defendant Harrell, Plaintiff was harmed and suffered damages as a result.

<u>**COUNT II**</u>
<u>**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983**</u>
<u>**(First Amendment– Retaliatory Prosecution)**</u>

76.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above and incorporates them as if fully set forth herein.

77.     Plaintiff Shull asserts this count against Defendant Officer Scott Harrell, for his retaliation against him on or about April 19, 2023.

78.     Defendant, at all relevant times, acted under the color of law and was an employee of the City of Texas City Police Department.

79.     Plaintiff engaged in constitutionally protected conduct by verbally criticizing and arguing with Defendant Harrell.  Plaintiff was further involved in protected activity since Defendant Harrell believed that if he did not arrest Plaintiff, Plaintiff would file a complaint against him.

80.     In direct response to Plaintiff engaging in protected conduct, Defendant Harrell intentionally, knowingly, maliciously, recklessly, and/or unreasonably caused the initiation of prosecution against Plaintiff despite lacking probable cause to support any charges.

81.     Defendant Harrell's report noted, "Based on Shull's behavior, and the likelihood that he will attempt to file a complaint, I am completing this report to document my actions and why I took those actions."

82.     Such retaliation would deter a person of ordinary firmness from engaging in such protected conduct.

83.     The retaliation was motivated at least in part by the protected speech.

84.     There is a causal connection between Plaintiff's constitutionally protected conduct and the adverse retaliatory actions taken by Defendant Harrell.

85.     Defendant Harrell's acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the First and Fourteenth Amendments to the Constitution of the United States, and in violation of 42 U.S.C. § 1983.

86.     As a proximate result of the illegal and unconstitutional acts of Defendant Harrell, Plaintiff was harmed and suffered damages as a result.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Fourth Amendment – Unlawful Seizure)

87.　Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

88.　Plaintiff Shull asserts this count against Defendant Officers Scott Harrell seizing him through unlawful detainment and/or arrest on or about April 19, 2023.

89.　Defendant, at all relevant times, acted under the color of law and were employees of the City of Texas City Police Department.

90.　If the seizure rose to an arrest, it was without probable cause. "[A] seizure without probable cause to believe the person is guilty of a crime violates the Fourth Amendment." *United States v. Massi*, 761 F.3d 512, 523 (5th Cir. 2014).

91.　If the seizure constituted a *Terry*-style detention, it violated the Fourth Amendment, as it was not based on "reasonable suspicion that criminal activity [was] afoot." *Caroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).

92.　Even if Defendant did not arrest or detain Plaintiff, he violated the Fourth Amendment. An "investigatory, suspicionless seizure trigger[s] a Fourth Amendment reasonableness analysis." *Lincoln v. Scott*, 887 F.3d 190, 196 (5th Cir. 2018).

93.　Plaintiff's seizure did not carry any public concern, did not advance any public interest, and was far more than a minimally intrusive stop authorized for suspicionless seizures. *Illinois v. Lidster*, 540 U.S. 419, 427-28 (2004).

94.　As a direct and proximate result of Defendant Harrell's unlawful actions, Plaintiff was harmed and suffered damages.

20

## DAMAGES

95.     **Actual damages.**  Defendant Harrell's acts or omissions were a proximate cause and the moving force behind the following actual damages suffered by Plaintiff.

96.     **Punitive/Exemplary Damages** against Defendant Harrell in his individual capacities.  Punitive/exemplary damages are recoverable under Section 1983 when the conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others.

97.     **Nominal damages** in the amount of $1.

98.     Prejudgment and post judgment interest.

99.     Costs of court.

100.    An award of attorney fees and costs in this action pursuant to 42 U.S.C. § 1988.

101.    An award of any further legal or equitable relief this Court may deem just and proper.

## JURY DEMAND

102.    Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that Defendant Harrell be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recovers judgment from Defendant Harrell actual and nominal damages, exemplary and punitive damages, pre-judgment interest at the legal rate; interest on the judgment at the legal rate; costs of court; attorney fees; and any other relief, both general and special, in law and equity, to which Plaintiff is justly entitled.

Respectfully Submitted,

**GRABLE GRIMSHAW PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
brandon@g2.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332
**COUNSEL FOR PLAINTIFF**